**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| ARTHUR HENRY SCHROCK, | ) No. ED CV 13-2312-PLA |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 23, 2013, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on January 8, 2014, and January 15, 2014. Pursuant to the Court's Order, the parties filed a Joint Stipulation on August 20, 2014, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

1  
2  

## II.

## BACKGROUND

3       Plaintiff was born on March 8, 1974.  [Administrative Record ("AR") at 192.]  He has a
4   twelfth grade education and past relevant work experience as a veterinary technician, cashier, and
5   fast food cashier/cook.  [AR at 20, 43, 277.]
6       On March 7, 2011, plaintiff filed an application for Disability Insurance Benefits ("DIB"), and
7   on March 18, 2011, he filed an application for Supplemental Security Income ("SSI") payments.
8   [AR at 190-98, 199-204.]  In both applications, plaintiff alleged disability beginning on May 16,
9   2010. [AR at 192, 199.] After the applications were denied initially and on reconsideration, plaintiff
10  filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  [AR at 126-31,
11  132-134, 137-43.]  A hearing was held on June 13, 2012, at which time plaintiff appeared
12  represented by an attorney, and testified on his own behalf.  [AR at 35-63.]  A vocational expert
13  ("VE") also testified.  [AR at 59-62.]  On July 16, 2012, the ALJ issued a decision concluding that
14  plaintiff was not under a disability from May 16, 2010, through the date of the decision.  [AR at 10-
15  23.]  Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied
16  on October 24, 2013.  [AR at 1-4, 5.]  This action followed.

17  
18  

## III.

## STANDARD OF REVIEW

20      Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's
21  decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial
22  evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622
23  F.3d 1228, 1231 (9th Cir. 2010).
24      "Substantial evidence means more than a mere scintilla, but less than a preponderance;
25  it is such relevant evidence as a reasonable mind might accept as adequate to support a
26  conclusion."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008)
27  (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

28

1998) (same).   When determining whether substantial evidence exists to support the

Commissioner's decision, the Court examines the administrative record as a whole, considering

adverse as well as supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001);

see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must

consider the entire record as a whole and may not affirm simply by isolating a specific quantum

of supporting evidence.") (internal quotation marks and citation omitted).   "Where evidence is

susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan,

528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin.,

466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the

ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.").

**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

to engage in any substantial gainful activity owing to a physical or mental impairment that is

expected to result in death or which has lasted or is expected to last for a continuous period of at

least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

1992).

**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must

determine whether the claimant is currently engaged in substantial gainful activity; if so, the

claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

substantial gainful activity, the second step requires the Commissioner to determine whether the

claimant has a "severe" impairment or combination of impairments significantly limiting his ability

1    to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

2    If the claimant has a "severe" impairment or combination of impairments, the third step requires

3    the Commissioner to determine whether the impairment or combination of impairments meets or

4    equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., pt. 404, subpt.

5    P, app. 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's

6    impairment or combination of impairments does not meet or equal an impairment in the Listing,

7    the fourth step requires the Commissioner to determine whether the claimant has sufficient

8    "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the

9    claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past

10   relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case

11   of disability is established.  The Commissioner then bears the burden of establishing that the

12   claimant is not disabled, because he can perform other substantial gainful work available in the

13   national economy.  The determination of this issue comprises the fifth and final step in the

14   sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966

15   F.2d at 1257.

16

17   **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

18          In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful

19   activity since his alleged onset date, May 16, 2010.[1]  [AR at 12.]  At step two, the ALJ concluded

20   that plaintiff has the following severe impairments:

21          [B]ack pain; chest pain; coronary artery disease; unstable angina; coronary
            atherosclerosis, status post quadruple coronary artery bypass surgery; status post
22          stent of the Left subclavian artery; cerebrovascular disease with intracranial
            stenosis; insulin dependent diabetes mellitus; hyperlipidemia; hypokalemia;
23          sternotomy; hypertension; attention deficit hyperactivity disorder; major depressive
            disorder; polysubstance dependence; and alcohol dependence.

24

25

26   _____

27   [1]    The ALJ concluded that plaintiff meets the insured status requirements of the Social
     Security Act through December 31, 2014.  [AR at 12.]
28

                                                       4

[AR at 13.]  The ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings.[2]  [AR at 13-14.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as follows:

> [L]ift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for two hours out of an eight-hour workday with regular breaks; he can sit for six hours out of an eight-hour workday with regular breaks; he can alternate between sitting and standing in one-hour intervals; he can occasionally climb, balance, stoop, kneel, crouch, crawl, and reach to shoulder level; and he can perform simple instructions.

[AR at 14-15.]  At step four, the ALJ concluded that plaintiff is able to perform his past relevant work as cashier II, as generally performed.  [AR at 20.]  In the alternative, the ALJ determined at step five that plaintiff can perform the following work, as generally performed:   veterinary technician (DOT 079.361-014); cashier II (DOT 211.462-010); and fast food worker (DOT 311.472-010).  [Id.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time from May 16, 2010, through the date of the decision.  [AR at 22.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred by failing to provide legally sufficient reasons for discounting:   (1) plaintiff's testimony; and (2) the Third Party Function Report submitted by plaintiff's friend, Albert Mata.  [Joint Stipulation ("JS") at 2.]  For the reasons set forth below, the Court agrees with plaintiff and remands for further proceedings.

/

---

[2]  See 20 C.F.R. pt. 404, subpt. P, app. 1.

[3]  RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1   **A.      PLAINTIFF'S CREDIBILITY**

2            Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting

3   his subjective symptom testimony.  [JS at 3-8.]

4            "To determine whether [plaintiff]'s testimony regarding subjective pain or symptoms is

5   credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028,

6   1035-36 (9th Cir. 2007). "First, the ALJ must determine whether [plaintiff] has presented objective

7   medical evidence of an underlying impairment 'which could reasonably be expected to produce

8   the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.

9   1991) (en banc)).  Second, if plaintiff meets the first test, the ALJ may reject his testimony about

10  symptom severity "only upon (1) finding evidence of malingering, or (2) expressing clear and

11  convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).

12  Factors to be considered in weighing plaintiff's credibility include:  (1) plaintiff's reputation for

13  truthfulness; (2) inconsistencies in plaintiff's testimony or between his testimony and his conduct;

14  (3) plaintiff's daily activities; (4) plaintiff's work record; and (5) testimony from physicians and third

15  parties concerning the nature, severity, and effect of the symptoms of which plaintiff complains.

16  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§

17  404.1529(c), 416.929(c).

18           Where, as here, the ALJ does not find "affirmative evidence" of malingering, the ALJ's

19  reasons for rejecting plaintiff's credibility must be clear and convincing. See Benton, 331 F.3d at

20  1040 (holding that where there is no evidence of malingering, the ALJ can reject plaintiff's

21  testimony only by "expressing clear and convincing reasons for doing so"). "General findings

22  [regarding plaintiff's credibility] are insufficient; rather, the ALJ must identify what testimony is not

23  credible and what evidence undermines [plaintiff]'s complaints." Reddick, 157 F.3d at 722 (internal

24  quotation marks and citation omitted); Berry, 622 F.3d at 1234 (same). The ALJ's findings "must

25  be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected plaintiff's

26  testimony on permissible grounds and did not arbitrarily discredit plaintiff's testimony regarding

27  pain." Bunnell, 947 F.2d at 345-46 (internal quotation marks and citation omitted). A "reviewing

28

1    court should not be forced to speculate as to the grounds for an adjudicator's rejection of
2    [plaintiff]'s allegations of disabling pain." Id. at 346. As such, an "implicit" finding that plaintiff's
3    testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per
4    curiam).

5            Plaintiff testified at the June 13, 2012, hearing that he was unable to work due to shortness
6    of breath, pain from a fractured ankle[4] that is slow to heal because of plaintiff's diabetes, and
7    nerve pain. [AR at 40-41, 48.] He further testified that his medication makes him "groggy" and
8    "zombie-like" and that he has a hard time keeping focused. [AR at 48.] Plaintiff also testified that
9    he is homeless and uses his son's friend's mailing address. [AR at 46.] Plaintiff alleged that he
10   suffers from chest pain lasting half an hour to forty-five minutes, two to three times a day, and
11   constant ankle pain. [AR at 48.] He also testified that his medication gives him the following side
12   effects: cloudy vision, nausea, confusion and drowsiness. [AR at 51.] Plaintiff indicated that he
13   has memory problems and a history of alcohol abuse. [AR at 52-53.]

14           The ALJ found plaintiff's complaints to be "less than fully credible." [AR at 16.] The ALJ
15   stated the following reasons for this determination: (1) plaintiff's daily activities indicate that he
16   engages in a "somewhat normal level of daily activity and interaction;" (2) plaintiff's treatment has
17   been essentially routine and conservative in nature; (3) plaintiff's subjective symptom testimony
18   regarding the severity of his vision problems is greater than expected in light of the objective
19   evidence of record and his daily activities; and (4) plaintiff has been noncompliant with his insulin
20   regime. [AR at 15-16.]

21           Having carefully reviewed the record, the Court concludes that the ALJ's credibility
22   determination is not supported by substantial evidence.

23

24           **1.    Plaintiff's Daily Activities**

25           The ALJ found plaintiff's complaints to be "less than fully credible" based on plaintiff's daily
26   activities, which indicated to the ALJ that plaintiff engaged in a "somewhat normal" level of daily

27   ───────────────

28       [4]   The ALJ observed plaintiff limping at the hearing. [AR at 40.]

activity and interaction despite his complaints.  [AR at 16.]  The ALJ also stated that "[t]he physical and mental capabilities requisite to performing many of the tasks described . . . as well as the social interactions[,] replicate those necessary for obtaining and maintaining employment."  [Id.]

An ALJ may discredit testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting.  Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012).  However, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting [plaintiff]'s testimony to the extent that they contradict claims of a totally debilitating impairment."  Id. (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)).

With respect to this daily activities, plaintiff testified:  he is homeless; in his homeless situation he does very minimal shopping; when the opportunity presents itself, he is able to prepare his meals and take care of his personal hygiene; when he stays with friends, he does minimal housework due to his shortness of breath; the last time he attempted yard work he ended up in the hospital; and he is unable to walk, or push a shopping cart for more than fifteen minutes at a time and that after doing so, he is "done."  [AR at 43-45.]  Plaintiff testified that he watches television, reads, plays video games, and spends time on the computer.  [AR at 46.]  Plaintiff stated that he is unable to do anything other than watch his son when they spend time together and that when plaintiff spends time with friends, they "just sit around." [AR at 46-47.]  Plaintiff also indicated that he occasionally watches his friend's children for an hour or two.  [AR at 46.]  Plaintiff said that he usually attends church weekly, for about an hour at a time, but that he had missed the two weeks prior to the hearing.  [AR at 47.]  He further indicated that he could not sit without needing to adjust, and that standing and walking cause him chest pain, shortness of breath, and aggravate his ankle injury.  [AR at 47-49.]  Plaintiff stated that he can only stand for a maximum of one hour after which he needs to rest for two-and-one-half to three hours; he is unable to stoop, crouch or reach without chest pain, and has occasions of cloudy vision accompanied by vomiting and dizziness.  [AR at 40-41, 48-49, 50-52, 56-57.]

1    Here, other than his conclusory statement that plaintiff's activities "replicate" the physical

2    and mental capabilities required to obtain and maintain employment, the ALJ fails to provide any

3    analysis as to how this is so. See Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990)

4    (holding that daily activities may not be relied upon to support an adverse credibility determination

5    unless the ALJ makes an explicit finding that plaintiff's ability to perform those activities translated

6    into the ability to perform appropriate work activities on an ongoing and daily basis).  Additionally,

7    although plaintiff testified to engaging in these various activities, the amount of involvement he

8    described was generally minimal.  For example, plaintiff stated he is unable to walk or push a cart

9    for more than fifteen minutes.  He stated that he cannot stand without pain in his ankle, cannot

10   walk without chest pain, and cannot sit without needing to adjust.  The ALJ noted that plaintiff

11   ambulated with a limp.  Plaintiff testified that when he is with his son all he can do is watch him

12   and that when plaintiff spends time with friends, they "just sit around."  The ALJ failed to explain

13   how these activities describe an individual who engages in a "normal" level of daily activity or

14   whose activities "replicate" those required for maintaining employment.

15   Accordingly, this was not a clear and convincing reason for discounting plaintiff's credibility.

16

17   **2.     Routine and Conservative Treatment**

18   The ALJ stated that plaintiff's treatment records revealed he has received only "routine,

19   conservative, and non-emergency treatment since the alleged onset date."  [AR at 17.]

20   An ALJ may properly rely on the fact that only routine and conservative treatment has been

21   prescribed. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).  However, in this case there

22   is evidence that plaintiff's treatment has been anything but routine and conservative, in that it

23   includes multiple trips to the emergency room, surgery to insert a stent in plaintiff's subclavian Left

24   artery, repeated cardiac catheterization, numerous EKGs, injections of nitroglycerine, and insulin.

25   As noted by the ALJ, in May 2010, plaintiff presented to the emergency room with

26   shortness of breath, plaque in his arteries, and new onset "unstable angina."  [AR at 17, 343-44,

27   348-49, 367-74.]  Plaintiff had coronary catheterization performed, which indicated three-vessel

28   artery disease, and underwent surgery the following day for coronary artery bypass grafting.  [AR

9

at 355-64, 367-74.]  A few months later, in October 2010, plaintiff presented to the emergency room with recurrent chest pain and was diagnosed as having "diffusely diseased . . . severe artery disease," and given his history, was kept overnight to have cardiac catheterization performed again. [AR at 353-54, 375-76.]  In February 2011, plaintiff again presented to the emergency room with chest pain, dizziness, and "double vision."  [AR at 421-31.]  Plaintiff was treated for hypokalemia, vomiting, diarrhea and chest pain.  [Id.]  Plaintiff was advised to "rest and relax." [AR at 431.]  Thereafter, plaintiff presented with chest pain again in March, April, and June 2011. [AR at 506-07, 530-32, 560-61, 584-85, 616-17, 621-33.] Plaintiff was again hospitalized in March 2011, because he was "increasingly diaphoretic and also became bradycardic."  [AR at 620-33.] He was treated for an episode of "gross bradycardia into the low 30's and treated with atropine," and kept for observation.  [Id.]  Plaintiff also fractured his ankle on August 31, 2011, and had a splint placed on it.  [AR at 490-96, 679.]

Based on the foregoing, the Court cannot agree that substantial evidence supports the ALJ's finding that plaintiff's treatment has been routine and conservative.  This was not a clear and convincing reason for discounting plaintiff's credibility.

### 3.    Plaintiff's Visual Impairment

The ALJ concluded that plaintiff's allegations regarding his vision problems were unsupported by the objective medical evidence of record.  [AR at 16.]  While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's credibility (see Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)), it is one factor that an ALJ can consider in evaluating symptom testimony.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ relied on only a portion of the objective medical evidence in reaching his conclusion that plaintiff's allegations of visual impairment were unsupported by the record, referring to the consultative medical examiner's visual acuity test performed, on July 8, 2011, that

1    revealed plaintiff had 20/30 vision in his right eye, and 20/20 vision in his left eye.  [AR at 459.]

2    However, plaintiff did not allege that he has constant vision problems.  Rather, plaintiff stated he

3    has occasional episodes that last for approximately thirty minutes, wherein he "lose[s] control of

4    [the] motor function[] in [his] eyes," and becomes nauseous and dizzy.  [AR at 52.]  Plaintiff

5    testified that he last experienced such an episode two days before the June 13, 2012, hearing.

6    [Id.]  Moreover, while the ALJ stated that the record was void of any complaints by plaintiff

7    regarding vision problems, the Court notes that on February 28, 2011, plaintiff complained of

8    "months [of] . . . a little dizziness and double vision."  [AR at 16, 421-23.]  Thus, the simple vision

9    test cited by the ALJ did not adequately address plaintiff's allegations or definitively confirm

10   plaintiff's visual acuity.

11          The ALJ also cited plaintiff's own testimony as a basis for finding that "[plaintiff]'s activities

12   of daily life are inconsistent with his allegations of debilitating vision problems."  [AR at 16.]  It is

13   not clear why the ALJ would credit one portion of plaintiff's testimony, regarding his daily activities,

14   and not another, regarding his vision problems.  See, e.g., Holohan v. Massanari, 246 F.3d 1195,

15   1208 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's

16   records while ignoring others); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) ("[T]he

17   [ALJ]'s decision 'cannot be affirmed simply by isolating a specific quantum of supporting

18   evidence.'") (citing Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)).  To the extent that

19   the ALJ relied on plaintiff's daily activities, he did not provide any further analysis with regard to

20   his conclusion that plaintiff's allegations of vision problems are inconsistent with his alleged daily

21   activities of watching television, reading, using the computer and playing video games.  Plaintiff

22   never claimed he engaged in these activities during an episode of visual impairment.  Hence, the

23   ALJ does not explain how plaintiff's allegation that his vision is sometimes impaired is less than

24   fully credible.  Therefore, the Court finds that as it stands, the ALJ has not provided a clear and

25   convincing reason for discounting plaintiff's testimony regarding his vision problems.

26   /

27   /

28   /

### 4.    Noncompliance with Medication

The ALJ further discounted plaintiff's credibility in stating that plaintiff "has not been entirely compliant with taking his prescribed medications." [AR at 16.] The ALJ noted that plaintiff advised his doctors that he had not followed his insulin regime and, because plaintiff had access to a clinic and insurance, such failure was an indication of "a possible unwillingness to do that which is necessary to improve his condition." [Id.]

An ALJ may consider an "unexplained or inadequately explained" failure to follow a prescribed course of treatment. See Molina, 674 F.3d at 1112; see also id. at 1113-14 ("[Plaintiff]'s failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of [plaintiff]'s . . . testimony.").

Here, plaintiff reported that he was unable to obtain the medication easily because he is homeless. [AR at 45, 506.] Moreover, plaintiff advised his doctors that given his homelessness, he "only eats when he's able to get food," which impacts plaintiff's blood sugar.  [AR at 435.] Plaintiff further stated that he has memory problems and sometimes forgets to take his medication. [AR at 53.]  Thus, to the extent that there was non-compliance with the insulin regime, plaintiff offered an explanation for that noncompliance, and the ALJ's conclusion that plaintiff failed to follow the insulin regime because he was "unwilling" to improve is nothing more than unfounded speculation.  As such, it is not a clear and convincing reason for discounting plaintiff's allegations.

### B.    THIRD PARTY FUNCTION REPORT

Plaintiff argues that the ALJ improperly discounted lay evidence from plaintiff's friend, Albert Mata, provided in a Third Party Function Report.  [JS at 15-17.]

An ALJ may consider lay witness testimony to determine the severity of a claimant's impairments and how the impairments affect his ability to work. Stout v. Comm'r of Social Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); 20 C.F.R. §§ 404.1513(d)(4), (e), 416.913(d)(4), (e). Lay witnesses include friends. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Lay witness testimony by friends who have the opportunity to observe a claimant on a daily basis "constitutes qualified

1    evidence" that the ALJ must consider.  See Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir.

2    1987).  The ALJ may only discount the testimony of lay witnesses for "reasons that are germane

3    to each witness."  Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

4           Here, the ALJ discounted Mr. Mata's report because: (1) Mata was not a medical

5    professional and could not provide medical diagnoses; (2) Mata did not give his report under oath;

6    and (3) Mata merely parroted plaintiff's subjective complaints. [AR at 14, 15, 16.] The Court notes

7    that the ALJ's assertion that the report provides a medical diagnosis is unsupported by the report

8    itself.  There is no medical "diagnosis" provided therein.  The report includes Mata's observations

9    that plaintiff tires easily; that plaintiff was taken to the emergency room following his attempt to

10   assist Mata perform yard work; and that plaintiff cannot lift anything heavy because he gets easily

11   fatigued.  [See AR at 251-59, 252.]  These observations do not amount to medical conclusions.

12

13          Furthermore, Mata submitted his observations regarding plaintiff's activities and abilities

14   on a "Function Report–Adult–Third Party," which is the Commissioner's own "Form

15   SSA–3380–BK." [AR at 251-59.]  There is no indication on the form that the person completing

16   it must make the statements under oath, nor do the regulations themselves require that such

17   forms be completed under oath.  See 20 C.F.R. §§ 404.1513(d), 416.913(d).  Thus, the ALJ's

18   contention that Mata's report was less than fully credible because the Commissioner's instructions

19   were followed and it was not given under oath is unavailing.

20          Finally, while the ALJ stated that Mata's statements "appear to be no more than

21   a parroting of the subjective complaints already testified to and reported" by plaintiff, Mata

22   completed the form based on his daily observations of plaintiff, who spends about 8-12 hours a

23   day with Mata.  [See AR at 16, 251.]  Thus, in the absence of the ALJ's identification of which of

24   Mata's statements merely "parrot[ed]" plaintiff's complaints, the statements "constitute[d] qualified

25   evidence" that the ALJ was obligated to consider.  See Sprague, 812 F.2d at 1231-32.

26          Accordingly, the ALJ did not provide reasons germane to Mata for assigning "far less than

27   persuasive value" to his statements.

28

**C.     CONCLUSION**

The reasons given by the ALJ for discounting plaintiff's credibility and the credibility of plaintiff's friend do not sufficiently allow the Court to conclude that the ALJ did so on permissible grounds.  Thus, the Court is unable to defer to the ALJ's credibility determinations.  See Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th Cir. 2007) (holding that a court will defer to ALJ's credibility determination when the proper process is used and proper reasons for the decision are provided); accord Flaten v. Sec'y of Health and Human Serv., 44 F.3d 1453, 1464 (9th Cir. 1995).

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Where:  (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, it is appropriate to exercise this discretion to direct an immediate award of benefits.  Garrison v. Colvin, __ F.3d __, 2014 WL 3397218, at *20 (9th Cir. July 14, 2014) (setting forth the three-part credit-as-true standard for exercising the Court's discretion to remand with instructions to calculate and award benefits); see also Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).

Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  See Benecke, 379 F.3d at 593-96; see also Connett v. Barnhart, 340 F.3d 871 (9th Cir. 2003) (cautioning that the credit-as-true rule may not be dispositive of the remand question in all cases, even where all three conditions are met).  In Garrison, the Ninth Circuit, noting that it had never exercised the flexibility set forth in Connett in a published decision, clarified that the nature of the flexibility described in Connett is "properly understood as requiring courts to remand for further proceedings when, even though

14

all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." <u>Garrison</u>, 2014 WL 3397218, at *21.

In this case, as discussed above, although the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's subjective symptom testimony, it is not clear that if the improperly discredited evidence were credited as true the ALJ would be required to find plaintiff disabled on remand.  Thus, the Court finds that there are outstanding issues that must be resolved before a final determination can be made.

In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings.  First, because the ALJ failed to provide clear and convincing reasons for discounting plaintiff's subjective symptom allegations, the ALJ on remand shall reassess plaintiff's credibility.  Second, because the ALJ failed to provide germane reasons for discounting lay witness testimony, the ALJ on remand will reassess the credibility of the lay witness report.  Third, the ALJ shall reassess plaintiff's RFC and determine, at step four, with the assistance of a VE, whether plaintiff is capable of performing his past relevant work.  If he is not so capable, then the ALJ should proceed to step five.

Accordingly, **IT IS HEREBY ORDERED** that:  (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: September 23, 2014

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

15